**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ARSENIO K. WASHINGTON,**<br>**Plaintiff,** | : | |
| **v.** | : | **CIVIL ACTION NO. 26-4465** |
| **CITIZENS BANK,** ***et al.***<br>**Defendants.** | : | |

**MEMORANDUM**

**MARSTON, J.** **August 25, 2026**

Arsenio K. Washington has filed a lengthy Complaint (Doc. No. 2, hereinafter "Compl.") naming 66 Defendants including state and county government agencies and officials, homeless shelters, medical providers, banks, courts, court officials, lawyers, tech companies, and myriad others.[1] In the Complaint, filed on June 29, 2026, he mentions events occurring as early as 2010 involving child support proceedings, evictions, banking irregularities, surveillance, homelessness, benefit denials, and criminal proceedings and incarceration. Washington seeks

[1] The named Defendants are: Citizens Bank, Pennsylvania Department of Labor & Industry, Sheraton Brooklyn Hotel, Pennsylvania's 61st Legislative District, Montgomery County Correctional Facility, "Montgomery County Adult Probation Department and Rise Above," Montgomery County Clerk of Courts And Court of Common Pleas, Montgomery County Sheriff's Office, Judge Thomas M. Delricci, Jediah Grobstein, Denise Maldonado also known as Denise Marone, James E. Tone, Kevin A. Carson, Pennsylvania Department of Human Services, Bureau of Hearing and Appeals, April Mocarsky, ALJ Derek Dale, Tracy L, Henry Esquire, CADCOM, Your Way Home, Access Services, ACLAMO, Genesis Housing, Philadelphia Office of Homeless Services, Philadelphia Housing Authority, SELF, Inc, ODAAT, NDC Asset Management, YWH ERUC, Prime Healthcare, Inc, Roxboro Memorial Hospital, Penn Medicine, PNC Bank, Consumer Financial Protection Bureau, Internal Revenue Service, Delaware Division of Child Support Services, York County Clerk of Courts, Lancaster County Clerk of Courts and Court of Common Pleas, SEPTA Transit Police, Jason Zhang, Cubesmart Storage, Rocket Lawyer, PECO, Apple, Google, Marriott International/Sheraton Brooklyn New York Hotel, BMI, Adult Force, Social Security Administration, Pennsylvania Department of Transportation, Philadelphia Adult Probation/Parole Office, ACORNS, Treasury Department U.S./PA, Equifax, T-Mobile/Metro PCS (and related entities), United Healthcare, Clint Sickel, Unknown Medical Personnel, Unknown DHS Supervisors, Unknown BHA Personnel, Prevention Point, Sunday Breakfast Rescue Mission, Lifepath Christian Ministries, Additional John Doe Defendants, and the Commonwealth of Pennsylvania. (Compl. at 9–11.)

leave to proceed *in forma pauperis*, which the Court will grant. But, for the following reasons, his Complaint is dismissed.

## I. FACTUAL ALLEGATIONS[2]

Washington alleges "background events" from 2010 to 2019 involving child support obligations; unlawful eviction, financial harm, and housing denials in 2020 and 2021; medical records, property, and surveillance issues in 2020 to 2022; a "personal injury incident and banking disputes" that he experienced while visiting New York in 2020; shelter, housing, and public assistance interference occurring from 2021 to the present; issues involving criminal charges in Montgomery County from 2023 to the present; incarceration at Montgomery County Correctional Facility ("MCCF") in 2025 to 2026; Pennsylvania Department of Human Services ("DHS") hearings and appeals occurring between 2022 and 2026; and "continuing injuries." (Compl. at 14–19.)[3] He claims that all Defendants entered into a civil conspiracy to violate his constitutional rights, even though the myriad events he describes appear unrelated on their face. (*See, e.g.*, *id.* at 19, 29–30; *see also id.* at 3 (mentioning procedural due process, equal protection, First Amendment retaliation and denial of access to courts, civil conspiracy, abuse of process,

---

[2] The factual allegations are taken from Washington's Complaint, consisting of the form available to unrepresented litigants to file claims plus a lengthy typed portion totaling 73 pages. (*See generally* Compl.) Washington also filed nearly 300 pages of exhibits. (Doc. Nos. 2-1, 2-2.) The exhibits comprise lists, resumes, emails, forms, state court docket sheets, medical records, Right To Know Law requests, and a Post Conviction Relief Act petition. (*Id.*) The Court deems the entire submission to constitute the Complaint, however with regard to the exhibits, "Judges are not like pigs, hunting for truffles buried in the record." *Doebler's Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (internal quotation marks and citation omitted). "While a court may consider exhibits attached to a complaint, merely attaching exhibits is insufficient to meet the requirement that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Berkery v. Credit Collection Servs.*, No. 21cv3809, 2021 WL 4060454, at *2 (E.D. Pa. Sept. 7, 2021). Accordingly, the Court does not consider the exhibits in reaching the conclusions herein.

[3] The Court adopts the sequential pagination assigned by the CM/ECF docketing system. Where the Court quotes from Washington's pro se pleadings, punctuation, spelling, and capitalization errors are cleaned up as needed.

and the Fourth, Fifth, Sixth, and Eighth Amendments).) Specifically, he claims the named judges and prosecutors violated his rights during criminal proceedings and are not immune from suit (*id*. at 20–26); Montgomery County and the other municipalities, which have no connections to Pennsylvania's Unified System of Justice or Commonwealth agencies, have otherwise unspecified customs and practices that failed to provide Washington with court notices, preserve court records, provide him with transcripts and access to administrative hearings, and adequately supervise correctional, probationary, and administrative staff (*id*. at 26); his due process rights were violated in that he was denied access to public benefits, housing opportunities, court access, legal documents, and liberty interests (*id*. at 27–28); he was denied equal protection (*id*. at 27); he suffered retaliation in violation of the First Amendment (*id*. at 29); he was denied access to the courts (*id*.); there was abuse of process in criminal and administrative proceedings, and in the misuse of warrants and "disciplinary mechanisms" (*id*. at 30); the non-judicial Defendants were negligent (*id*. at 30–31); and he suffered intentional infliction of emotional distress (*id*. at 31).[4] He seeks an order to stop ongoing fraud, monitoring of his whereabouts, freezing of his assets, protection from abuse orders, other unspecified declarative and injunctive relief, and money damages. (*Id*. at 5, 31–33.)

## II. STANDARD OF REVIEW

Upon review of Washington's Motion for Leave to Proceed *In Forma Pauperis* (Doc. No. 1), the Court grants him leave to proceed without paying the filing fee. Accordingly, 28

[4] As this summary indicates, Washinton makes passing reference to numerous constitutional violations, but passing references to legal provisions are insufficient to bring a plausible claim before the Court. *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) ("A passing reference to an issue will not suffice to bring that issue before this court.") (citation modified) (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)). The Court's screening of the Complaint, therefore, is more easily accomplished by analyzing the allegations against each of the named Defendants, individually, or in groups.

U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the pro se pleading as true, draw all reasonable inferences in Washington's favor, and ask only whether the Complaint contains facts that are sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Washinton is proceeding pro se, the Court liberally construes his allegations. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F. 3d at 245). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F. 3d at 245); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23cv1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it by name,' *Higgins v. Beyer*, 293 F.3d

683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

A complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). To conform to Rule 8, a pleading must contain a short and plain statement showing that the plaintiff is entitled to relief. *See Travaline v. U.S. Supreme Court*, 424 F. App'x 78, 79 (3d Cir. 2011) (quoting Fed. R. Civ. P. 8(d)(1) (stating that "[e]ach averment must be 'simple, concise, and direct.'"). The United States Court of Appeals for the Third Circuit has explained that in determining whether a pleading meets Rule 8's "plain" statement requirement, the court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). A pleading may still satisfy the "plain" statement requirement "even if it is vague, repetitious, or contains extraneous information" and "even if it does not include every name, date, and location of the incidents at issue." *Id.* at 93–94. The important consideration for the Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

However, "a pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* at 93; *see also Gowans v. Axsom,* No. 25cv2070, 2025 WL 2848907, at *1 (3d Cir. Oct. 8, 2025) ("Fundamentally, Rule 8 requires that a complaint provide fair notice of what the claim is and the grounds upon which it rests." (internal quotation marks omitted) (quoting *Garrett*, 938 F.3d at 92)). In other words, a complaint must contain sufficient clarity "to avoid requiring a district court or opposing party to forever sift through its pages in search of the nature of the plaintiff's claim." *Testa v. Internal*

*Revenue Serv.,* No. 22cv3382, 2023 WL 8271966, at *1 (3d Cir. Nov. 30, 2023) (quoting Fed. R. Civ. P. 8(d)(1) (internal quotations and citations omitted). Dismissals under Rule 8 are "reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Garrett*, 938 F.3d at 94 (internal quotation marks omitted) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

Furthermore, the Court must dismiss the Complaint if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Grp. Against Smog & Pollution, Inc. v. Shenango, Inc*., 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). And the Court may take judicial notice of information published on a government website, including, here, information from the websites of the Commonwealth of Pennsylvania. *See Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017).

## III. DISCUSSION

The Court states at the outset that Washington's Complaint violates Rule 8. It is "best described as a 'kitchen sink' or 'shotgun' complaint because it essentially seeks to bring 'every conceivable claim against every conceivable defendant'" in one case. *Anderson v. First Premier Bank,* No. 25cv5502, 2025 WL 3214776, at *6 (E.D. Pa. Nov. 17, 2025) (quoting *Talley v. Harper*, No. 14cv1411, 2017 WL 413069, at *2 (W.D. Pa. Jan. 31, 2017)). Courts have "repeatedly criticized" this type of pleading as "troublesome for many reasons." *Id.* (quoting *Talley,* 2017 WL 413069, at *2).

> For one thing, complaints like [that] . . . unfairly burden defendants and courts. The plaintiff who files such a shotgun complaint shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support. This is not the job of either a defendant

> or the Court. It is the plaintiff's burden under Rule 8 to reasonably investigate his claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them.
>
> It is important to note that a "kitchen-sink" or "shotgun" complaint also harms the plaintiff who brings it. In most cases, a genuine dispute that supports a viable legal claim underlies a plaintiff's complaint. But this genuine dispute becomes almost impossible to discern when it is buried in pages of various allegations, some of which may not rise to the level of a constitutional claim.

*Anderson,* 2025 WL 3214776, at *6 (internal quotations and citations omitted). Because Washington's Complaint violates Rule 8, it is dismissed.[5]

In the alternative, the Court finds dismissal appropriate because Washington has not stated plausible claims for relief. Jurisdiction for Washington's federal constitutional claims is provided by 42 U.S.C. § 1983. "Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Halsey v. Pfeiffer,* 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983); *see also Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (explaining § 1983 "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." (quoting *Baker v.*

---

[5] The Complaint also violates Federal Rule of Civil Procedure 20. Rule 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). "But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *Pew v. Little*, No. 22cv1488, 2024 WL 967823, at *2 (E.D. Pa. March 6, 2024 (citing *McKinney v. Prosecutor's Office*, No. 13cv2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted)). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *Williams v. Miller*, No. 25cv6293, 2026 WL 209815, at *8 (E.D. Pa. Jan. 27, 2026) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)). The Court can discern no connection between, for example, Washington's claims based on his criminal proceedings and his claims about evictions, a personal injury incident, and banking disputes, which also seem to have little if any connection to each other.

*McCollan,* 443 U.S. 137, 145 n. 3 (1979))). To state a claim under § 1983, a plaintiff must demonstrate "that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Karns v. Shanahan,* 879 F.3d 504, 520 (3d Cir. 2018) (quoting *Elmore,* 399 F.3d at 281); *see also Halsey,* 750 F.3d at 290 ("To state a claim under section 1983, a plaintiff must demonstrate that 'some person has deprived him of a federal right . . . [and] that the person who has deprived him of that right acted under color of state or territorial law.'" (quoting *Gomez v. Toledo,* 446 U.S. 635, 640 (1980))).

Here, Washington's § 1983 claims appear to be barred or implausible because they: (1) name judges and prosecutors who are generally immune from suit for claims based on their official activities; (2) name administrative law judges entitled to quasi-judicial immunity; (3) name Commonwealth entities and officials against whom he impermissibly seeks money damages that are barred under the Eleventh Amendment; (4) assert constitutional violations against non-state actors like banks, hotels, hospitals, cell phone service providers, insurance companies, and tech companies; and (5) are against federal agencies entitled to sovereign immunity.[6] The Court discusses each of these claims, and why they require dismissal, in turn below.

**A. Immune Defendants**

Washington has named Defendants that enjoy either absolute immunity or quasi-judicial immunity.

[6] Further, some claims may also be untimely. The timeliness of a Section 1983 claim is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). The Pennsylvania statute of limitations for a personal injury action is two years. *Id.* at 634 (citing 42 Pa. Cons. Stat. § 5524(2)).

**1. Judge Thomas M. DelRicci**

Having reviewed Washington's Complaint in its entirety, the Court finds that all allegations against Judge DelRicci arise from acts taken in his judicial capacity. Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012); *Azubuko v. Royal*, 443 F.3d 302, 303–04 (3d Cir. 2006). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443–44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)). Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991), or are taken as a result of a conspiracy with others, *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). The only allegations against Judge DelRicci are based upon his issuance of a bench warrant and him serving as the trial judge during Washington's prior criminal case in state court.[7] (Compl. at 38, 39, 42, 44.) He is absolutely immune from any claim based on those actions.

**2. Clerks of Court**

Courts have held that clerks of court and clerk's office employees enjoy absolute immunity and quasi-judicial immunity when performing duties required by statute or at the direction of judicial authority. *See, e.g.*, *Lucarelli v. Norton*, No. 06cv53, 2006 WL 709319, at

[7] *See Commonwealth v. Washington*, CP-46-CR-0000993-2024 (C.P. Montgomery).

*7 (M.D. Pa. Mar. 17, 2006); *Pokrandt v. Shields*, 773 F. Supp. 758, 765 (E.D. Pa. 1991) (noting that courts have held that clerks of court are entitled to immunity the same as judges); *DeFerro v. Coco*, 719 F. Supp. 379, 381 (E.D. Pa. 1989) (holding that absolute immunity extends to court clerk because he was a "nonjudicial officials whose activities are integrally related to the judicial process and involve the exercise of discretion comparable to that of a judge"); *Mercedes v. Barrett*, 453 F.2d 391, 392 (3d Cir. 1971); *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969) ("In addition to the recognized immunity enjoyed by judicial and quasijudicial [sic] officers, including prothonotaries, there exists an equally well-grounded principle that any public official acting pursuant to court directive is also immune from suit.").

Washington has included in his list of Defendants the Clerks of the Courts of Common Pleas of Montgomery County, Lancaster County, and York County. Of the allegations the Court can discern, they are as follows. The Montgomery County Clerk sent a sentencing hearing notice that "triggered" the issuance of a bench warrant (Compl. at 39); someone in the Montgomery County Clerk's Office told someone at MCCF to not provide Washington with certain information (*id*. at 40, 43); Washington sent a letter/petition/application to the Secretary of the Department of Human Services outlining how the Clerk refused to provide him documents and (along with many others) violated his rights (*id*. at 42–44); after Washington was released from the MCCF on January 16, 2026, he spoke with a probation officer about dropping off a document for the Clerk of Court (*id*. at 44); Washington had to provide a payment plan document from the Clerk to the Social Security Administration as part of a benefits application (*id*. at 56–57); and the Clerk somehow postponed Washington's fines and costs (*id*. at 60). The York County Clerk took child support payments from Washington to give to the Delaware State Health and Social Services Division of Child Support, and intercepted his 2013 tax refund due to

child support arrears (*id*. at 62). Finally, the Lancaster County Clerk provided the Court information about a 2017 drug possession charge listed on the Pennsylvania Unified Judicial System ("UJS") portal (*id*. at 68). Actions such as providing a sentencing hearing notice, postponing payment of a fine and costs, directing the collection of child support obligations, and uploading information to the UJS portal are all the types of actions taken according to statute or judicial direction and for which a Clerk of Court is entitled to immunity. Any potential remaining allegations against the Clerks are too vague to assert plausible civil rights claims and thus would be dismissed for the same Rule 8 and Rule 20 reasons discussed above. (*See generally* Compl.); *see also infra* Section III.

### 3. ALJ Derek Dale and Chief ALJ Tracy L. Henry

Washington also names DHS Bureau of Hearings and Appeals ("BHA") Administrative Law Judge ("ALJ") Derek Dale,[8] who presided over an appeal from the Philadelphia Office of Homeless Services ("OHS"). (Compl. at 46–48, 53–54.) Washington alleges that ALJ Dale ordered OHS to schedule a hearing, intervened to stop the recording of a proceeding, instructed a witness not to answer a question, refused to issue a subpoena, waived a pre-hearing conference, and admitted that the OHS notices contained structural errors.[9] (*Id.*) Chief ALJ Tracy L. Henry[10] is listed as a Defendant in the Complaint, but Washington makes no substantive allegations about her personal involvement in the events he describes. One of Washington's

---

[8] *See* https://www.pa.gov/agencies/dhs/departments-offices/oa-info/oa-bureau-hearings-appeals (last viewed Aug. 12, 2026)

[9] Among Washington's exhibits is an order and adjudication signed by ALJ Dale dismissing his appeal of a denial of medical assistance and SNAP benefits. (Doc. No. 2-2 at 27–41.)

[10] Chief ALJ Henry is employed by the same agency as ALJ Dale. *See* https://www.pa.gov/agencies/dhs/departments-offices/oa-info/oa-bureau-hearings-appeals (last viewed Aug. 12, 2026).

exhibits is a Final Administrative Action Order signed by Chief ALJ Henry affirming ALJ Dale's decision. (Doc. No. 2-2 at 26.)

The doctrine of quasi-judicial immunity provides that those "who perform functions closely associated with the judicial process" are immune from damages suits in their individual capacities. *Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). The doctrine protects a range of government actors, including "those who make discretionary judgments 'functionally comparable' to judges." *Id.* (internal brackets omitted) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976)); *see also Hamilton v. Leavy*, 322 F.3d 776, 785 (3d Cir. 2003). Accordingly, the doctrine has been extended to cover ALJs and agency officials tasked with performing adjudicative functions within executive agencies. *Savadjian v. Caride*, 827 F. App'x 199, 201–02 (3d Cir. 2020) (first citing *Cleavinger*, 474 U.S. at 200, then *Butz v. Economou*, 438 U.S. 478, 516 (1978)).

To determine whether a government actor is afforded quasi-judicial immunity, "we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Russell*, 905 F.3d at 247 (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988)). As explained by the United States Court of Appeals for the Third Circuit in *Savadjian*, the United States Supreme Court formulated factors in *Cleavinger* to evaluate whether a government actor's function qualifies as "judicial" for the purpose of determining immunity. *Savadjian*, 827 F. App'x at 202 (citing *Cleavinger*, 474 U.S. at 202). Those "touchstone" factors include "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;

(c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Id.* (citing *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011)).

Washington's description of Dale's role in the OHS appeal hearings and the attached exhibit containing Dale's adjudication, make clear that his claims against Dale are based on the ALJ's adjudicative acts, such as making an evidentiary ruling, determining that a hearing had to be scheduled, managing the record of a proceeding, instructing a witness whether or not to answer a question, issuing or refusing to issue a subpoena, conducting or waiving a pre-hearing conference, and ruling on the legality of a notice. The claim against Henry appears to be based on her affirming Dale's decision. Accordingly, the claims against Dale and Henry will be dismissed with prejudice because they both enjoy quasi-judicial immunity.

**4. Prosecutor Jediah Grobstein**

Prosecutors are entitled to absolute immunity from liability under Section 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler*, 424 U.S. at 430–31. Absolute immunity extends to the decision to initiate a prosecution, *id*. at 431, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence, *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020); *see also id.* at 164 (3d Cir. 2020) (prosecutors were entitled to immunity from claims based on allegations "that at hearings and at trial the Prosecutors withheld material exculpatory evidence from defense counsel, the court, and the jury; filed a criminal complaint without probable cause; and committed perjury before and during trial"). Jediah Grobstein appears to

have been named because he was the prosecutor in one of Washington's criminal cases[11] and Washington alleges in only conclusory terms that he engaged in conduct other than in his role representing the Commonwealth. (*See* Compl. at 24–25, 38, 43–44.) Accordingly, the claim against Grobstein will be dismissed without prejudice.

### B. Non-State Actors

Washington attempts to assert civil rights claims against numerous individuals and entities that are not "state actors." Whether a defendant is acting under color of state law—i.e., whether the defendant is a state actor—depends on whether there is "such 'a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach*, 589 F.3d at 646 (internal quotations and alteration omitted).

Washington's Section 1983 claims against Citizens Bank, Sheraton Brooklyn Hotel, NDC Asset Management, Roxboro Memorial Hospital, Penn Medicine, PNC Bank, Jason Zhang (a landlord)[12], Cubesmart Storage, Rocket Lawyer, PECO, Apple, Google, Marriott International/Sheraton Brooklyn New York Hotel, BMI, Adult Force, ACORNS, Equifax, T-

---

[11] *See Commonwealth v. Washington*, CP-46-CR-0000993-2024 (C.P. Montgomery).

[12] Public records indicate that Zhang brought an eviction action against Washington. *See Zhang v. Washington*, MJ-38115-LT-0000072-2020 (M.J. Montgomery).

Mobile/Metro PCS (and related entities), and United Healthcare do not allege facts to indicate that these entities and individuals are state actors under the above tests. Additionally, Washington names several homeless shelters and homelessness services agencies—CADCOM, Your Way Home, Access Services, ACLAMO, Genesis Housing, SELF, Inc, ODAAT, YWH ERUC, Prevention Point, Sunday Breakfast Rescue Mission, and Lifepath Christian Ministries—that are not state actors. *Bell v. SELF Inc.*, No. 23cv3646, 2023 WL 7004419, at *5 (E.D. Pa. Oct. 24, 2023) (collecting cases holding that homeless shelters, as well as their operators, directors, and employees are not state actors).

The defense attorneys he has named as Defendants in the case, Denise Maldonado, also known as Denise Marone, James E. Tone, and Kevin A. Carson, are also not state actors. *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."); *Clark v. Punshon*, 516 F. App'x 97, 99 (3d Cir. 2013) (noting that a court-appointed attorney is not a state actor for purposes of Section 1983); *Webb v. Chapman*, 852 F. App'x 659, 660 (3d Cir. 2021) ("[A]ttorneys representing individuals in criminal proceedings generally are not state actors for purposes of § 1983."). Accordingly, Washington's Section 1983 claims against these individuals and entities will be dismissed with prejudice.

**C. States, State Agencies, and State Employees**

Washington also names the Commonwealth, several Commonwealth agencies, and courts of the Commonwealth, against whom he seeks money damages.[13] States are not considered

[13] These Defendants are the Commonwealth, the Pennsylvania Treasury Department, PennDOT, the Pennsylvania Department of Labor & Industry, Pennsylvania's 61st Legislative District, DHS, and BHA. Washington also names the Montgomery County Court of Common Pleas and Lancaster County Court of Common Pleas, which are parts of the Commonwealth Unified System of Justice and thus state agencies. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005). He also names the Montgomery County Adult Probation Department and Philadelphia Adult Probation/Parole Office, which

"persons" for purposes of Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989). Furthermore, the Eleventh Amendment bars such direct suits seeking money damages against a state and its agencies in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). The Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b). Accordingly, the claims for money damages against the Commonwealth of Pennsylvania, its agencies, and its courts will be dismissed without prejudice.[14] *See Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (stating that Eleventh Amendment dismissals should be without prejudice). For the same reasons, any claim against Delaware Division of Child Support Services is likewise dismissed.[15]

**D. Federal Agencies**

Washington also names the United States Consumer Financial Protection Bureau, Internal Revenue Service, Social Security Administration, and Treasury as liable for his civil rights claims. A constitutional claim against a federal actor is provided by *Bivens v. Six*

---

are agencies of their respective Courts of Common Pleas or the Pennsylvania Board of Probation and Parole. *See Beahm v. Burke*, 982 F. Supp. 2d 451, 455 (E.D. Pa. 2013).

[14] Washington also asks for unspecified injunctive relief in his Complaint. State officials may be sued in their official capacities where the plaintiff seeks prospective injunctive relief to stop an ongoing violation of federal law. *See Ex parte Young,* 209 U.S. 123 (1908); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). However, Washington has failed to allege a plausible claim involving an ongoing violation of federal law. Thus, any request for injunctive relief will be dismissed without prejudice.

[15] Washington also names Unknown Medical Personnel, Unknown DHS Supervisors, Unknown BHA Personnel, and other John Doe Defendants. To the extent these unknown persons are state employees named in their official capacities, those claims would actually be claims against the Commonwealth and are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will*, 491 U.S. at 70–71. To the extent they are named in their individual capacities, Washington makes no factual allegations against any specific unknown individual and thus any such claim is not plausible. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable).

*Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971) (holding that a remedy is available for a federal agent's violation of a citizen's Fourth Amendment right to be free from warrantless searches and seizures). However, *Bivens* claims brought directly against the United States and its agencies are barred by sovereign immunity, absent an explicit waiver. *See Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 72 (2001); *F.D.I.C. v. Meyer,* 510 U.S. 471, 486 n. 11 (1994); *Jaffee v. United States,* 592 F.2d 712, 717 (3d Cir. 1979). Accordingly, all civil rights claims against these agencies will be dismissed without prejudice. *See Corsnitz v. Dep't of Env't Prot.*, No. 24cv1783, 2025 WL 999472, at *3 (3d Cir. Apr. 3, 2025) (stating that sovereign immunity dismissals should be without prejudice).

**E. Other Improper Defendants**

Washington also seeks to bring civil rights claims against various improper Defendants that cannot be easily grouped.

**1. MCCF**

Washington sues MCCF, a jail based in Montgomery County, Pennsylvania. But a jail is not a "person" under Section 1983. *Cephas v. George W. Hill Corr. Facility*, No. 09-cv6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Miller v. Curran-Fromhold Corr. Facility*, No. 13-cv7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cnty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976)). MCCF will therefore be dismissed as a Defendant with prejudice.

**2. Montgomery County Sheriff's Office**

Washington names the Montgomery County Sheriff's Office because a July 2, 2025 property receipt allegedly showed that Washington's belongings were not held at the MCCF during his June 2025 to January 2026 incarceration, and listed his address listed as 801 W.

Girard Avenue in Philadelphia. (Compl. at 37, 39; *see also* Doc No. 2-2 at 136–37 (Sheriff's Office Property/Evidence Report).) Claims against a county sheriff's department are treated as claims against the county itself. *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 n.4 (3d Cir. 1997). This is because "Pennsylvania county offices . . . are treated as municipalities for purposes of *Monell* [*v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)]." *Hatfield v. Berube*, 714 F. App'x 99, 102 n.1 (3d Cir. 2017) (citing *Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013)).

To state a plausible claim against a county under Section 1983, a plaintiff must allege that the county's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* For a custom to be the proximate cause of an injury, a plaintiff must allege that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a plausible claim. *See*, *e.g.*, *Szerensci v. Shimshock*, No. 20cv1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability

under Monell.") (citing cases). Washington's claim regarding the property receipt fails to allege a policy or custom of Montgomery County caused a violation of his rights. So, the claims against the Sheriff's Office will be dismissed.

**3. Prime Healthcare, Inc.**

Washington also appears to bring a claim against Prime Healthcare, Inc. ("Primecare") because it is a medical provider at MCCF. He claims that it "issued a fraudulent medical claim, dated 1/15/26, prior to [his] jail/prison release on 1/16/26." (Compl. at 40, 57.) Primecare was also "notified via request forms, sick call request forms" about Clean Water Act and "Environmental Protection Act" violations that took place at the MCCF. (*Id.* at 42.)

A private corporation under contract to provide medical services at a jail or prison may be liable under Section 1983 in certain circumstances. The United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell* to claims against medical contractor)). Rather, in order to hold a private health care company, like Primecare, liable for a constitutional violation under Section 1983, a prisoner must allege facts showing the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d 575, 583–84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13cv1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting

deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted). Because Washington does not allege that a policy or custom of Primecare caused a violation of his rights, this claim is also not plausible and must be dismissed.

**4. Philadelphia Office of Homeless Services**

Next, Washington names the Philadelphia Office of Homeless Services, a city agency, as a Defendant. But city agencies are not suable entities under Section 1983 because they do not have a separate legal existence. *See Vurimindi v. City of Philadelphia*, No. 10cv88, 2010 WL 3169610, at *1 (E.D. Pa. Aug. 10, 2010) (holding that under 53 Pa. Cons. Stat. § 16257, "no such department shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transaction . . . shall be in the name of the City of Philadelphia"); *Vangjeli v. City of Philadelphia*, No. 15cv1566, 2015 WL 5793926, at *3 (E.D. Pa. Sept. 30, 2015), *aff'd* 655 F. App'x 132 (3d Cir. 2016) (holding Free Library is not an entity subject to suit since no department or agency of the City of Philadelphia has a separate corporate existence); *Bush v. City of Phila. Police Dep't*, 684 F. Supp. 2d 634, 636 (E.D. Pa. 2010) (dismissing the Philadelphia Police Department as a matter of law because it is not a legal entity separate from the City of Philadelphia); *Gremo v. Karlin*, 363 F. Supp. 2d 771, 780–81 (E.D. Pa. 2005) (dismissing City of Philadelphia Police Department and the City of Philadelphia Police Department Northeast Detective Division). Accordingly, any claim against the Philadelphia Office of Homeless Services will be dismissed.

**5. Philadelphia Housing Authority**

Washington claims that he applied for emergency housing/shelter and public assistance (rent relief), dating back to 2020, but the Philadelphia Housing Authority's Office of Housing Services ("PHA/OHS") refused to place him in adequate housing at a shelter or provide him with

rent relief. (Compl. at 57–58.) He also alleges that he received a housing voucher from PHA in 2023–2024, but SELF Inc. refused to honor it because there was death in his sleeping room during a prior placement at its facility. (*Id.* at 59.) He claims that PHA/OHS does not issue housing vouchers to individuals who are not in compliance with the shelter/housing rules and guidelines. (*Id.*) He also applied in 2025 for emergency housing or rent relief through PHA/OHS to over 60 nonprofit organizations and the other entities mentioned in its emergency housing section, but apparently was not placed. (*Id.*)

PHA, although a Commonwealth entity, falls within the definition of "person" as a local government entity for purposes of Section 1983 liability. *See Solomon v. Phila. Hous. Auth.*, 143 F. App'x 447, 456 n.14 (3d Cir. 2005) (citing *Wright v. Phila. Hous. Auth.*, 94cv1601, 1994 WL 597716, *3 (E.D. Pa. 1994)); *see also Lee v. Petrolichio*, 697 F. App'x 112, 113 n.5 (3d Cir. 2017) (a plaintiff must allege a governmental policy or custom to state a claim against PHA). Even so, *Monell* liability must be alleged to bring a civil rights claim against it. *See Petrolichio*, 697 F. App'x at 113 n.5. Here, Washington merely alleges that PHA/OHS does not issue housing vouchers to individuals who are not in compliance with the shelter/housing rules and guidelines. This allegation by Washington does not constitute a plausible claim since he does not allege that the agency's requirement that he comply with its rules is unreasonable and why, and he does not point to any rule that caused a violation of his constitutional rights.

**6. SEPTA Transit Police**

Washington alleges that SEPTA Transit Police violated the Uniform Criminal Extradition Act ("UCEA") by arresting him on a frivolous bench warrant. (Compl. at 39.) He claims that in June 2025, he was arrested because the Commonwealth "ordered the local and/or county police department(s) to harass [him] while [he] was utilizing Septa's public transportation." (*Id.*) He

told the officers that he hopped the turnstile gate to retrieve his bookbag, but they stopped him and issued a citation because "it looked as if I was going to ride the train" even though he did not actually get on the train. (*Id.*) He had also been cited in 2024, "but the citing officer(s) admitted that The Commonwealth of PA ordered them to harass me and ensure that I appear before a judge." He tried to pay for his train ride, remembering that he had a SEPTA pass in his pocket, but the officers told him, "they don't want you to pay, they want you to go to court." (*Id.*) He claims that hopping the turnstile gate "was completely an accident on that particular day." (*Id.* at 39–40.)

Deeming the claim against SEPTA Transit Police as a claim against SEPTA itself, the Court notes that SEPTA may be liable as a municipal agency. *See Bolden v. Se. Pa. Trans. Auth.*, 953 F.2d 807, 821, 831 (3d Cir. 1991) (recognizing SEPTA's status as a municipal agency for the purposes of Section 1983). And assuming that a violation of the UCEA also violates the minimal requirements of the Constitution, *see United States v. Pennsylvania State Police*, 548 F. Supp. 9, 16 (E.D. Pa. 1982) (collecting cases and holding that a UCEA violation can state a cause of action under Section 1983), the UCEA claim against SEPTA based on one or both of the alleged citations is at best undeveloped. Washington does not allege he was extradited from one jurisdiction to another, as would be required to state a UCEA claim. He only alleges in conclusory terms that he was arrested on a frivolous bench warrant. But because conclusory allegations do not suffice to state a plausible claim, *Iqbal*, 556 U.S. at 678, any civil rights claim based on a violation of the UCEA cannot proceed as pled.

**7. April Mocarsky**

April Mocarsky is identified along with ALJ Dale and Chief ALJ Henry as a Pennsylvania DHS employee. (Compl. at 9.) Washington's claims concerning her are difficult

to understand. He alleges that, after he was released from MCCF on January 16, 2026, he spoke with Mocarsky about payment of his fine and dropping off documents with the Montgomery County Clerk. (*Id.* at 44.) Mocarsky provided the BHA with his current residential address perhaps involving a claim for Medicaid benefits. (*Id.*) He then spoke with Mocarsky about information concerning his DHS housing claim. (*Id.*) On February 27, 2026, he had a follow up call with her about a remand order and appeal letter/email concerning his Medicaid cancellation. (*Id.*) Mocarsky informed the BHA that Washington needed a copy of all of the transcripts from all of the Philadelphia OHS and court proceedings. (*Id.* at 45.) Mocarsky was also informed that Washington had been requesting copies of all of the transcripts and documents related to his litigation and claims, but he had not received copies (apparently because he was represented by Attorney Tone). (*Id.*)

On March 5, 2026, Washington had a phone appointment concerning Social Security disability benefits and a follow-up phone call with Mocarsky. (*Id.*) The follow up phone call was to touch base on the status of a remand order, pre-trial conference scheduling, and the OHS "defense claim" concerning "false information provided to [him] by the SSI/SSD representative." (*Id.*) He had another call with Mocarsky on March 11 for the same purposes in which he apparently mentioned that she provided inaccurate information to the BHA during a March 10 remand order appeal hearing. (*Id.* at 46.) Mocarsky told him previously that his Medicaid benefits could be reinstated but then told the judge on March 10 that OHS automatically reinstated his Medicaid benefits because had been released from MCCF on January 16, 2026. (*Id.*) He claims there was "intentional perjury/misinformation, committed by the SSA representative on 3/5/26 during my SSI/SSD appointment." (*Id.*)

At some point, Washington's SNAP benefits had been deactivated three times and OHS was "ordered to explain why." (*Id.*) While unclear if there is any relation to that incident, Washington alleges in the same paragraph that Mocarsky was informed to not schedule the pre-trial conference if OHS had "no intentions on providing all of the requests/remedies expressed in [his] petition(s)." (*Id.*) Between February 25 and March 11, Mocarsky confirmed via a phone call and again during the March 10 remand order appeal hearing, that Washington's Medicaid benefits have been deactivated/postponed until further notice due to the unresolved OHS litigation. She also stated that his medical benefits were reactivated due to the remand appeal hearing and pretrial conference attempts. (*Id.*) It was reset for March 31, 2026. (*Id.* at 47.) Washington appears to allege that Mocarsky testified falsely or refused to answer his questions about the cessation of benefits at the hearing conducted by ALJ Dale. (*Id.*)

Any claim based on Mocarsky's testimony as a witness will be dismissed. Individuals are entitled to absolute immunity from civil rights claims based on testimony they give. *See Williams v. Hepting*, 844 F.2d 138, 141 (3d Cir. 1988) (stating that witness immunity is "firmly bottomed in public policy"); *see also Briscoe v. LaHue*, 460 U.S. 325, 329–30 (1983) (holding that under absolute witness immunity a convicted defendant could not state a claim for damages under Section 1983 against a police officer who had allegedly given perjured testimony at the defendant's criminal trial). The nature of any other claim that Washington attempts to bring against Mocarsky is largely incomprehensible, and the Court will not guess the reasons why Washington has otherwise named Mocarsky as a Defendant. Stated simply, the nature of any other claim against her is so "confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Garrett*, 938 F.3d at 94. Because the Defendant

cannot possibly understand and respond to Washington's allegations, his remaining claims against Mocarsky will be dismissed for failing to comply with Rule 8.

### 8. Clint Sickel and Rise Above

Clint Sickel is apparently associated with an entity called Rise Above, which Montgomery County uses to conduct mental health evaluations as part of preparing pre-sentencing investigations in criminal cases. (Compl. at 39–40.) Washington claims that Sickel (and Rise Above) "was provided with false documentation, during the 8/2025 PSI/PPI and/or mental health evaluation, about the details behind my incarceration and criminal charges. Mr. Sickel was provided with court documentation that said I was incarcerated (as of 6/29/25) due to a probation/parole violation, my court appointed attorney is not James E. Tone, and my adult probation/parole officer is Eric Quackenbush." (*Id*. at 39.) These allegations fail to allege any plausible cause of action. Washington does not explain how Sickel and Rise Above *being provided with* incorrect information from some unidentified source violated his constitutional rights or otherwise injured him, particularly since he does not explain how, if at all, that information was used. Accordingly, any claim against Sickel and Rise Above is also dismissed.

## IV. CONCLUSION

Washington's Complaint violates multiple Federal Rules and brings improper or, at minimum, underdeveloped, claims against various entities and persons. (*See* Compl.) Accordingly, his civil rights claims will be dismissed in their entirety as follows, though he will be given the opportunity to replead some of his claims:

1. The claims against Judge DelRicci, ALJ Dale, and Chief ALJ Henry will be dismissed with prejudice because they are absolutely immune. They will be terminated as

Defendants. The claim against April Mocarsky, to the extent based on her being a witness, will also be dismissed with prejudice on immunity grounds.

2. The claims against the United States Consumer Financial Protection Bureau, Internal Revenue Service, Social Security Administration, and United States Treasury Department will be dismissed without prejudice as barred by sovereign immunity. They will be terminated as Defendants.

3. MCCF will be dismissed with prejudice because it is not a "person" and the Philadelphia Office of Homeless Services will be dismissed with prejudice because city agencies are not suable entities under Section 1983. They will be terminated as Defendants.

4. The claims against Citizens Bank, Sheraton Brooklyn Hotel, Montgomery County Correctional Facility, Denise Maldonado also known as Denise Marone, James E. Tone, Kevin A. Carson, CADCOM, Your Way Home, Access Services, ACLAMO, Genesis Housing, SELF, Inc, ODAAT, NDC Asset Management, YWH ERUC, Roxboro Memorial Hospital, Penn Medicine, PNC Bank, Consumer Financial Protection Bureau, Internal Revenue Service, Jason Zhang, Cubesmart Storage, Rocket Lawyer, PECO, Apple, Google, Marriott International/Sheraton Brooklyn New York Hotel, BMI, Adult Force, ACORNS, Equifax, T-Mobile/Metro PCS (and related entities), United Healthcare, Prevention Point, Sunday Breakfast Rescue Mission, and Lifepath Christian Ministries will be dismissed with prejudice because the Defendants are not state actors. They will be terminated as Defendants.

5. The claims for money damages against the Delaware Division of Child Support Services; the Commonwealth and its entities: Pennsylvania Department of Labor & Industry, Pennsylvania Treasury Department, Pennsylvania's 61st Legislative District, Montgomery County Adult Probation Department, Montgomery County Court of Common Pleas,

Pennsylvania Department of Human Services and its Bureau of Hearing and Appeals, Lancaster County Court of Common Pleas, Pennsylvania Department of Transportation, and Philadelphia Adult Probation/Parole Office; as well as any official capacity claims against Commonwealth employees April Mocarsky and all named Court Clerks will be dismissed without prejudice as barred by the Eleventh Amendment. No amendment of those claims will be permitted. All claims against these Defendants seeking nonmonetary relief will be dismissed without prejudice for failure to state a plausible claim.

6. All claims against Prosecutor Grobstein, the Montgomery County Sheriff's Office, Philadelphia Housing Authority, Prime Healthcare, Inc, SEPTA Transit Police, Clint Sickel, Rise Above, Unknown Medical Personnel, Unknown DHS Supervisors, Unknown BHA Personnel, and Additional John Doe Defendants will be dismissed without prejudice for failure to state a plausible claim.

7. Finally, all state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.[16]

An order with additional information on amending certain claims dismissed without prejudice will be entered separately. Washington is advised that attempting to reassert a claim that has been dismissed with prejudice or renaming a Defendant that has been terminated from the case is **not** permitted. Washington should be aware that he will not be permitted to proceed if he files another "kitchen sink" pleading containing unrelated claims. Rather, he must bring

[16] Because the Court dismisses Washington's federal law claims, we will not exercise supplemental jurisdiction over any state law claims. Washington, who provides a Philadelphia address for himself and names many Pennsylvania agencies and officials, has not met his burden to demonstrate diversity of citizenship jurisdiction over any state law claims. *See* 28 U.S.C. § 1332(a); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met). Accordingly, they will be dismissed without prejudice for lack of subject matter jurisdiction.

unrelated claims in separate lawsuits and provide a basis for the Court's jurisdiction. Should he attempt to amend this case, he must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires that he present a short plain statement of his claims, as well as Rule 10, which requires that a pleading contain a caption with the Court's name and the names of all of the parties, and that claims be listed in numbered paragraphs. *Fabian v. St. Mary's Med. Ctr.*, No. 16cv4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (citing Fed. R. Civ. P. 10). The purpose of these rules is to make clear to the Court and the defendants the factual basis for a plaintiff's claims so that the defendants can meaningfully respond to those claims. *Segreaves v. Haines,* No. 24cv4356, 2024 WL 5008503, at *4 (E.D. Pa. Dec. 5, 2024) ("The purpose of Rule 10 is to create clarity in pleadings, which allows a defendant and the Court to determine whether there are sufficient facts to support a claim entitling a plaintiff to relief.") (quotation omitted). In other words, Washington must state the "who, what, where, when and why" of his claims. *See Davis v. Internal Revenue Serv.*, No. 21cv4728, 2022 WL 407639, at *3 (E.D. Pa. Feb. 9, 2022); (citing *Gambrell v. S. Brunswick Bd. of Educ.*, No. 18cv16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019)). He may not do so by relying on exhibits but must allege facts in narrative form.

An accompanying order follows.[17]

---

[17] The Order filed with this Memorandum will also deny Washington's Motion for Service (Doc. No. 3), Emergency Motion for Temporary Restraining Order (Doc. No. 8), Motion to Set Aside (Doc. No. 9), Motion to Compel Docketing (Doc. No. 10), Motion for Appointment of Counsel (Doc. No. 11), Emergency Motion for Return, Preservation, and Protection of Property Interests (Doc. No. 12), and Emergency Motion for Early Expedited Discovery (Doc. No. 13). The Complaint will not be served until Washington presents facts upon which he can state a plausible claim. 28 U.S.C. § 1915(e)(2)(B)(ii). Because Washington has not presented plausible claims, he cannot meet his burden to show the likelihood of success on the merits necessary to grant a request for an emergency temporary restraining order or an emergency motion to return property. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). His motions to set aside "any federal judgment, order, or procedural disposition," to "compel docketing," are denied because they are not only premature, but also incomprehensible and lack merit. The motion for appointment of counsel is premature. *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1983) (holding that, in determining whether to appoint *pro bono* counsel, the Court must first consider, as a threshold matter,

whether the plaintiff's claim has "some merit in fact and law"). Finally, since neither the Court nor any Defendant could presently understand the claims Washington seeks to raise, the emergency motion for early expedited discovery is also premature.